DECISION
This is an appeal by defendant, Gary T. Curry, from a judgment of the Franklin County Court of Common Pleas, following a jury trial in which defendant was found guilty of one count of drug trafficking.
On January 15, 1998, defendant was indicted on two counts of trafficking in drugs (cocaine), in violation of R.C.2925.03. Count one alleged that defendant engaged in a drug trafficking offense on July 10, 1997, while count two alleged that he committed a drug trafficking offense on July 17, 1997. The case came for trial before a jury beginning on February 22, 1999.
The first witness for the state was Jeff Stobart, an officer with the Franklin County Sheriff's Department, and a member of the department's special investigative unit. As part of his duties, Officer Stobart is involved with investigating undercover narcotics activity.
On July 10, 1997, Stobart met with an individual named Danielle Pelfrey at a tattoo parlor near Cleveland Avenue. A confidential informant introduced Stobart to Pelfrey. Stobart's intent was to attempt to purchase an ounce of cocaine from Pelfrey. Other undercover officers were conducting surveillance in the area at the time, and Stobart was wearing a listening device.
After meeting with Pelfrey for a brief period of time, Pelfrey instructed Stobart to follow her to her residence at Great Woods Boulevard. Pelfrey was driving a white Dodge Stealth. At Pelfrey's apartment, Stobart expressed an interest in purchasing an ounce of cocaine. Pelfrey did not have any drugs with her at the time, and she indicated that she would have to contact her supplier. Pelfrey used a pager to make contact with an individual. Stobart overheard Pelfrey indicate that she was going to meet the supplier at a HQ store in the Morse Road area.
Stobart gave Pelfrey thirteen hundred dollars, and the undercover officer waited at Pelfrey's residence while Pelfrey left in her vehicle. Stobart informed a surveillance officer regarding Pelfrey's destination.
Approximately one-half hour later, Pelfrey returned and handed Stobart a red and black Doritos potato chip bag. The bag contained an ounce of cocaine. Stobart and Pelfrey discussed "possibly hooking up on another occasion," and then Stobart left the residence. (Tr. 26.) Stobart took the cocaine to the detective bureau's impound room.
On July 17, 1997, Stobart again met with Pelfrey at her residence, at which time Stobart expressed an interest in purchasing three ounces of cocaine. Surveillance officers were again in the area. Pelfrey paged an individual and shortly thereafter a telephone call was returned.
Stobart and Pelfrey then drove to the China Buffet restaurant, located near Tamarack Circle, and they both went inside the restaurant to eat. A short time later, a black male arrived at the restaurant on a motorcycle. At trial, Officer Stobart identified the defendant as the individual who was riding the motorcycle on July 17.
Pelfrey told Stobart to "stay put," and she exited the restaurant. (Tr. 31.) Officer Stobart observed Pelfrey and the defendant talking in the parking lot. Stobart had already given Pelfrey thirty-nine hundred dollars in pre-recorded bills.
After approximately fifteen minutes, Pelfrey left the parking lot in her car. Pelfrey returned a short time later and Stobart went outside to her car. Pelfrey handed Stobart a plastic bag containing one ounce of cocaine. Stobart got out of the car and Pelfrey drove away.
Following the transaction on July 17, an arrest warrant was issued for the defendant. Pelfrey was also subsequently arrested.
Michael Turner was the next witness for the state. Turner is a detective with the Franklin County Sheriff's Department, and he is involved in undercover narcotics investigations. Turner participated in the surveillance of the incidents involving Officer Stobart on July 10, 1997 and July 17, 1997.
On July 10, Detective Turner observed Stobart and Pelfrey at a business location near Piedmont Road and Cleveland Avenue. A short time later, Stobart and Pelfrey left the area in separate vehicles. Detective Turner followed both vehicles to a location near Route 161, in the vicinity of Pelfrey's apartment complex. Pelfrey was driving a white Dodge Stealth.
As previously noted, Officer Stobart was wearing a listening device. After about ten minutes, Detective Turner was informed that Pelfrey was leaving the apartment complex to go to a HQ store on Morse Road. Detective Turner then left the apartment complex and drove to the HQ store, pulling into a parking spot.
Shortly thereafter, Turner observed Pelfrey's white Stealth enter the parking lot. Pelfrey parked her vehicle approximately three aisles to the east of Turner's vehicle. Turner testified that the parking lot was not crowded that day. A short time later, a black pickup truck pulled into the parking lot and parked beside Pelfrey's vehicle. There were two black males in the pickup truck. Detective Turner observed the activity with binoculars. The passenger in the pickup truck got out of the vehicle carrying a red and black potato chip bag and entered Pelfrey's vehicle. After a few minutes, the man got out of the car; Detective Turner did not observe anything in the man's hand after he exited the car. At trial, Detective Turner identified the defendant as the black male passenger he observed in the HQ parking lot.
Detective Turner observed Pelfrey get out of her car and walk over to the pickup truck and engage in a brief conversation with the men. Pelfrey then got in her vehicle and left the parking lot. The two men in the truck then parked the vehicle in another parking spot, and they both entered the HQ store. Detective Turner went inside the store and observed both men near an electrical aisle. Turner then went outside, repositioned his vehicle and later took photographs of the two men as they exited the HQ store. The photographs were admitted at trial, along with a photograph showing Pelfrey and the defendant in the parking lot of the HQ store.
One week later, on July 17, Detective Turner was engaged in surveillance on Morse Road in the parking lot of the China Buffet restaurant. Turner observed Officer Stobart and Pelfrey arrive at the restaurant. Both Stobart and Pelfrey went inside the establishment. A short time later, Detective Turner observed the defendant pull up to the restaurant on a motorcycle.
The defendant got off the motorcycle and Pelfrey came out of the restaurant and walked toward him. The defendant and Pelfrey got into Pelfrey's vehicle and Turner observed Pelfrey drive around the lot; Pelfrey then pulled up in front of the restaurant and the defendant got out of the car. Pelfrey then went back inside the restaurant.
Following the presentation of evidence, the jury returned a verdict finding defendant guilty of drug trafficking as charged in count one, but not guilty of drug trafficking as charged in count two of the indictment. The trial court sentenced defendant by entry filed June 28, 1999.
On appeal, defendant sets forth the following single assignment of error for review:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICITON AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
Under his single assignment of error, defendant challenges his conviction as unsupported by sufficient evidence and as against the manifest weight of the evidence. Defendant asserts that, while there was evidence indicating that the defendant handed Pelfrey a Doritos potato chip bag in the parking lot of the HQ store on July 10, 1997, there was no evidence showing that Pelfrey then gave the defendant the $1,300 payment. Defendant also contends that there was no evidence concerning what was inside the potato chip bag at the time that defendant handed it to Pelfrey.
The Ohio Supreme Court has recognized that the legal concepts of sufficiency of the evidence and weight of the evidence are different. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In determining whether there is sufficient evidence to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The test for reviewing the weight of the evidence, however, is slightly different, "and the evidence is not construed most strongly in favor of the state." State v.Booth (May 6, 1999), Franklin App. No. 98AP-944, unreported, quoting State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Rather, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." Booth, supra.
In the instant case, defendant was convicted of one count of drug trafficking, in violation of R.C. 2925.03. Pursuant to R.C. 2925.03(A), "[n]o person shall knowingly sell or offer to sell a controlled substance."
In considering the question of sufficiency, the evidence construed most strongly in favor of the state indicates that on July 10, 1997, Stobart, an undercover police officer, met with Danielle Pelfrey. Stobart told Pelfrey that he wanted to purchase cocaine, and the officer handed her thirteen hundred dollars. Pelfrey used a pager to contact a supplier, and Stobart overheard Pelfrey indicate that she would meet with the individual at a store on Morse Road. Detective Turner, who was involved in the surveillance, was notified by other surveillance officers regarding Pelfrey's destination.
Turner immediately drove to the HQ store on Morse Road, arriving before Pelfrey. Turner observed Pelfrey pull into the parking lot of the store. Shortly thereafter, a pickup truck entered the parking lot and pulled up immediately alongside Pelfrey's vehicle even though the parking lot was not crowded. The defendant got out of the truck carrying a red and black potato chip bag and entered Pelfrey's vehicle, suggesting a prior arrangement. When defendant exited the vehicle, he was not carrying the bag. Pelfrey subsequently returned to her apartment and handed Stobart a red and black Doritos potato chip bag containing cocaine. There was also evidence presented regarding a second drug purchase arranged between Stobart and Pelfrey a week later. As noted by the state, the evidence indicated that in both incidents Pelfrey met with the defendant outside public establishments prior to the completion of the transactions.
Evidence sufficient to support a conviction may be "direct, circumstantial or both." State v. Davis (Sept. 24, 1998), Franklin App. No. 98AP-192, unreported. Under Ohio law, "[c]ircumstantial and direct evidence possess the same probative value," and "[w]hen the state relies on circumstantial evidence to prove the essential elements of its case, there is no need for such evidence to be irreconcilable with any reasonable theory of defense in order to support a conviction." Id., citing Jenks,supra.
In the present case, we conclude that the circumstantial evidence was sufficient for the jury to reasonably infer that defendant supplied the cocaine to Pelfrey during the incident on July 10, 1997. We find unpersuasive defendant's contention that the evidence failed to show a "sale" where the state's witnesses did not observe money being exchanged between Pelfrey and defendant. R.C. 2925.01(A) "incorporates the R.C. 3719.01(EE) definition of `sale' into the drug statutes," a definition that is "broader than the common dictionary definition of `sale.'" Statev. Adkins (1992), 80 Ohio App.3d 211, 221. R.C. 3719.01(AA) defines "[s]ale" to include "delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." In the present case, there was sufficient evidence by which the trier of fact could conclude that defendant engaged in a "sale" by delivering or transferring cocaine to Pelfrey on July 10.
Nor do we find persuasive defendant's contention that his conviction was not supported by the evidence because the state failed to prove what was inside the Doritos bag at the time defendant transferred it to Pelfrey. As noted by the state, under Ohio law a defendant may be convicted solely on the basis of circumstantial evidence. State v. Nicely (1988), 39 Ohio St.3d 147,151. Further, "`[c]ircumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable.'" Id., quoting United States v. Andrino (C.A.9, 1974), 501 F.2d 1373, 1378. Here, construing the evidence in the light most favorable to the state, the jury could find that Pelfrey and the defendant met at the parking lot of the HQ store pursuant to a pre-arranged plan, and that defendant transferred a Doritos potato chip bag to Pelfrey. In considering the evidence as a whole, it was reasonable for the jury to draw the inference that the red and black potato chip bag defendant was carrying when he met with Pelfrey was the same Doritos bag Pelfrey gave to Stobart a short time later containing cocaine. See, e.g., Statev. Carson (Nov. 9, 1993), Franklin App. No. 93AP-707, unreported ("Although no one specifically saw what was exchanged between appellant and Powell, circumstantial evidence indicates that it was the money involved in the drug sales"). As one federal court has noted, "[n]either juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings." United States v. Smith (C.A.1 1982), 680 F.2d 255,260.
In sum, construing the evidence and the reasonable inferences in the light most favorable to the state, the jury could have found the elements of trafficking proven beyond a reasonable doubt. Further, in considering defendant's manifest weight argument, we find that the jury did not lose its way in reaching its verdict. Based on the record in this case, there was sufficient, competent credible evidence to permit the jury to find defendant guilty beyond a reasonable doubt, and we will not substitute our judgment for that of the jury.
Based upon the foregoing, defendant's single assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 ________________________________ DESHLER, PRESIDING JUDGE
BROWN, J., and BOWMAN, P.J., concur.